```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                        :
EVA JUDITH BURGOS-RIVERA,               :    CASE NO. 1:17-CV-730
                                        :
        Plaintiff,                      :
                                        :
    vs.                                 :    OPINION & ORDER
                                        :    [Resolving Doc. 1]
COMMISSIONER OF SOCIAL                  :
SECURITY,                               :
                                        :
        Defendant.                      :
                                        :
------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Eva Judith Burgos-Rivera seeks review of the Social Security Administration's denial of disability and disability insurance benefits.[1] Magistrate Judge Thomas M. Parker recommended affirming the benefits denial.[2] Plaintiff raises two objections.[3]

For the following reasons, the Court **OVERRULES** Plaintiff's objections; **ADOPTS IN PART AND REJECTS IN PART** the Magistrate Judge's Report and Recommendation (R&R); and **AFFIRMS** the decision of the Commissioner of Social Security.

## I. BACKGROUND

On May 30, 2013, Plaintiff Burgos-Rivera applied for disability and disability insurance benefits.[4] She alleged she was disabled as of May 14, 2013 because of multiple sclerosis and spinal arthritis.[5]

---

[1] Doc. 1.
[2] Doc. 17.
[3] Doc. 18.
[4] Doc. 11 at 126.
[5] *Id.* at 24, 276.

The Social Security Administration ("SSA") denied Burgos-Rivera's application initially and on reconsideration.[6] On November 30, 2015, Administrative Law Judge (ALJ) Paul R. Bronson conducted a hearing on her application.[7] On February 3, 2016, the ALJ denied Plaintiff's application.[8] The Appeals Council denied review on February 9, 2017, rendering the ALJ's conclusion the Commissioner's final decision.[9]

On April 7, 2017, Plaintiff Burgos-Rivera filed this action seeking review of the Commissioner's final decision.[10] After a referral, on March 28, 2018, the Magistrate Judge filed an R&R, recommending that the Court affirm the Commissioner's final decision.[11]

Plaintiff asserts two objections to the R&R.[12] Plaintiff objects to the Magistrate Judge's assessment of the ALJ's determination of Plaintiff's intellectual disability under Listing 12.05(C) and objects to the ALJ's residual functional capacity (RFC) determination. Plaintiff does not object to any other parts of the R&R.[13]

## II. LEGAL STANDARD

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of the R&R to which the parties object.[14] The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[15]

When reviewing an ALJ's disability determination under the Social Security Act, a district court reviews whether the ALJ's decision is "supported by substantial evidence and [is] made

---

[6] *Id.* at 126, 137, 146.
[7] *Id.* at 44.
[8] *Id.* at 18, 24.
[9] *Id.* at 1-3.
[10] Doc. 1.
[11] Doc. 17.
[12] Doc. 18.
[13] *See id.*
[14] 28 U.S.C. § 636(b)(1).
[15] *Id.*

pursuant to proper legal standards."[16] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[17] Substantial evidence is more than a scintilla of evidence, but less than a preponderance.[18]

A district court should not try to resolve "conflicts in evidence[] or decide questions of credibility."[19] A district court may also not reverse an ALJ's decision when substantial evidence supports it, even if the court would have made a different decision.[20]

To establish disability under the Social Security Act, a plaintiff must show that she cannot engage in any substantial gainful activity because of a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[21]

## III. DISCUSSION

**A. Intellectual Disability Determination under Listing 12.05(C)**

Plaintiff's first objection focuses on the Magistrate Judge's analysis of Plaintiff's disability qualification under Listing 12.05(C).

As an initial matter, Plaintiff argues that the Magistrate Judge impermissibly employed post hoc rationalization to conclude Plaintiff did not qualify as disabled for having an intellectual disability under Listing 12.05(C).[22] The Court disagrees.

---

[16] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see also* 42 U.S.C. § 405(g).
[17] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted).
[18] *Id.*
[19] *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).
[20] *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (holding that an ALJ's decision cannot be overturned so long as the ALJ's decision was supported by substantial evidence).
[21] 42 U.S.C. § 423(d)(1)(A); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).
[22] Doc. 18 at 4-5.

Case No. 1:17-CV-730
Gwin, J.

Under the relevant Social Security regulations, an ALJ must find a claimant disabled if she meets a listing.[23] The ALJ never explicitly discussed whether Plaintiff was disabled for intellectual disability under Listing 12.05(C).[24] The Magistrate Judge recognized as much, but pointed to substantial evidence in the record showing Plaintiff was not likely disabled under the listing.[25]

Although the ALJ is required to find a claimant disabled if she meets a relevant listing, the ALJ is not required to address every possible listing or discuss a listing that the claimant clearly does not meet.[26] Rather, the ALJ need only discuss the relevant listing where the record raises "*a substantial question* as to whether [the claimant] could qualify as disabled" under a listing.[27]

The burden is on the claimant to point to "specific evidence" that demonstrates she could reasonably meet or equal every requirement of the listing.[28] "A substantial question about whether a claimant meets a listing requires more than . . . a mere toehold in the record on an essential element of the listing."[29] Absent such a showing, the ALJ does not commit reversible error by failing to evaluate a listing in analyzing Plaintiff's claim.[30]

In light of this standard, the Magistrate Judge's analysis of the record was not impermissible post hoc rationalization. Rather, the Magistrate Judge's analysis simply focused on whether a substantial question existed as to whether Plaintiff might qualify as disabled under Listing 12.05(C) such that the ALJ should have discussed that listing. The Magistrate Judge held that there was no such substantial question,[31] and the Court mostly agrees with this assessment.

---

[23] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).
[24] *See* Doc. 11 at 26-29.
[25] *See* Doc. 17 at 32-36.
[26] *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 431-36 (6th Cir. 2014).
[27] *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir.1990) (emphasis added).
[28] *Smith-Johnson*, 579 F. App'x at 432.
[29] *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 642 (6th Cir. 2013).
[30] *Id.*
[31] Doc. 17 at 35-36.

Case No. 1:17-CV-730
Gwin, J.

To establish intellectual disability under Listing 12.05, a claimant must show she meets both (1) the listing's diagnostic description and (2) at least one of the listing's criteria. To satisfy the diagnostic description, plaintiff must show: (1) sub-average intellectual functioning; (2) onset before age twenty-two; and (3) deficits in adaptive functioning.[32]

To satisfy Listing 12.05's Criteria C (at issue in this case), plaintiff must show (1) a "valid verbal, performance, or full scale IQ of 60 through 70" and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."[33]

The only issue is Plaintiff's satisfaction of Listing 12.05's diagnostic description.

Here, the Magistrate Judge found that Plaintiff had failed to point to any specific evidence of any of the three diagnostic description factors.[34] The Court agrees only in part.

Plaintiff may have raised a substantial question as to whether she exhibited sub-average intellectual functioning and deficits in adaptive functioning; however, the Court finds Plaintiff fails to raise a substantial question as to whether her intellectual disability had an onset before age 22.

**1.** *Sub-average Intellectual Functioning and Deficits in Adaptive Functioning*

To start, there is a substantial question as to whether Plaintiff exhibits sub-average intellectual functioning and deficits in adaptive functioning.

Deficits in adaptive functioning refer to a claimant's "effectiveness in areas such as social skills, communication skills, and daily-living skills."[35]

---

[32] The Court applies the regulation effective at the time of the ALJ's February 2016 decision. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2016); *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009).
[33] 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2016).
[34] Doc. 17 at 32-36.
[35] *Hayes,* 357 F. App'x at 677; *see also Sheeks,* 544 F. App'x at 642.

Case No. 1:17-CV-730
Gwin, J.

The Magistrate Judge pointed to Burgos-Rivera's academic record, work history, and psychological evaluations as evidence suggesting Plaintiff did not exhibit sub-average intellectual functioning or adaptive functioning deficits.[36]

Burgos-Rivera graduated from high school, had not enrolled in special education classes, was never held back or failed, and maintained average grades.[37] Plaintiff has a long history of performing lower-level, semi-skilled work as a power press tender from 2000 until 2013.[38] Plaintiff could do the laundry, vacuuming, cleaning, cooking, dishes, and grocery shopping and had only moderate difficulties in social functioning.[39] One psychologist expert had testified that Plaintiff exhibited normal mental status,[40] and another only diagnosed Plaintiff with borderline intellectual functioning, rather than an intellectual disability.[41] Contrary to Plaintiff's arguments,[42] this evidence undermines Plaintiff's assertions that she exhibited sub-average intellectual functioning or adaptive functioning deficits.[43]

---

[36] Doc. 17 at 32-36.
[37] *Id.* at 34 (citing Doc. 11 at 32, 322-23).
[38] *Id.* (citing Doc. 11 at 37, 76, 81).
[39] *Id.* at 35 (citing Doc. 11 at 28-29, 306).
[40] *Id.* (citing Doc. 11 at 73-74, 283, 313, 361, 379-80, 386-87, 394, 400-01, 407).
[41] *Id.* (citing Doc. 11 at 32, 334-35).
[42] First, *Dragon v. Comm'r of Soc. Sec.* is not instructive here. That case held that graduation from high school does not necessarily invalidate a low IQ score. 470 F. App'x 454, 463 (6th Cir. 2012). But the Magistrate Judge said there was never an ALJ determination that Plaintiff's IQ score was invalid. Doc. 17 at 31-32. Second, the cases that the Magistrate Judge cited to support his determination are not distinguishable. Like the plaintiffs in those cases, Plaintiff also has a work history that undermines the argument that she is intellectually disabled. *See Justice v. Comm'r Soc. Sec. Admin.*, 515 F. App'x 583, 587 (6th Cir. 2013) (no deficits in adaptive functioning that manifested during development period in part because claimant had "a lengthy work history, including a variety of semiskilled and unskilled positions."); *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001) (no deficits in adaptive functioning before age 22 because claimant worked as an accounting clerk and a liquor store clerk); *Poll v. Berryhill*, No. 3:16CV2061, 2017 WL 3731988, at *5-6 (N.D. Ohio Aug. 30, 2017) (no deficits in adaptive functioning in part because claimant could "maintain income above substantial gainful activity levels for approximately fifteen years.").
[43] *See Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492 (6th Cir. 2010) (finding claimant's academic record and work history supported ALJ determination that intellectual disability did not manifest before age 22); *Dowling v. Comm'r of Soc. Sec. Admin.*, No. 1:16-CV-02180, 2017 WL 2417077, at *9-10 (N.D. Ohio May 18, 2017), *report and recommendation adopted sub nom. Dowling v. Berryhill*, No. 1:16-CV-2180, 2017 WL 2416992 (N.D. Ohio June 3, 2017) (considering graduation from high school, borderline intellectual functioning diagnosis, and work history in finding no substantial question as to Listing 12.05(C) qualification).

Case No. 1:17-CV-730
Gwin, J.

Nevertheless, Plaintiff pointed to specific evidence that supports her assertions. Plaintiff pointed to Mr. Richard C. Halas's medical opinion that Plaintiff has significant problems in concentrating, paying attention, persisting, and pacing her work.[44] Mr. Halas also opined that Plaintiff has problems responding to supervision.[45] Plaintiff also pointed to Dr. Kristin Haskins's opinion that Plaintiff was moderately limited in understanding and memory as well as in sustained concentration, persistence, and pace.[46] Lastly, Plaintiff pointed to her "extremely low" scores in memory and "significantly below average" scores in her ability to work in a rapid and accurate manner, her speed in processing information, her verbal abstractions, her vocabulary, her current fund of information, and her ability to concentrate.[47] The ALJ himself considered much of this evidence in his residual functional capacity analysis.[48]

Therefore, the Court finds that there is a substantial question as to Plaintiff's satisfaction of the first and third factors of Listing 12.05's diagnostic description. The Court therefore **REJECTS** the R&R on this issue.

### 2. *Onset before Age 22*

Nevertheless, Plaintiff fails to demonstrate a substantial question as to whether her intellectual disability had an onset before age 22.

With respect to this factor, Plaintiff argues that there is a rebuttable presumption that her post-age 22 IQ score of 67 IQ is evidence that her intellectual disability occurred before age 22.[49]

---

[44] Doc. 12 at 14; Doc. 15 at 3 (citing Doc. 11 at 327).
[45] Doc. 11 at 327.
[46] Doc. 12 at 14; Doc. 15 at 3 (citing Doc. 11 at 112-14).
[47] Doc. 12 at 14; Doc. 15 at 3 (citing Doc. 11 at 328, 334-35).
[48] Doc. 11 at 32, 34-35 (considering Mr. Halas's and Dr. Haskins's opinions and her low memory scores).
[49] Doc. 18 at 2-3.

However, Plaintiff relies on out-of-circuit cases to support this proposition.[50] The Sixth Circuit has not held such a presumption exists,[51] so the Court declines to apply one here.

Plaintiff has put forth no affirmative evidence showing her intellectual disability occurred before age 22.[52] The Magistrate Judge, however, pointed to evidence undermining Plaintiff's claims that her intellectual disability occurred before age 22. Specifically, the Magistrate Judge noted that Plaintiff graduated from high school and maintained average grades and had a history of semi-skilled press operator work.[53] No testing or evaluation occurred before age 22.[54] In light of this record evidence and Plaintiff's failure to put forth any specific evidence, the Court finds no substantial question as to whether Plaintiff's intellectual disability had an onset before age 22.[55]

Moreover, the Court finds no basis for allowing Plaintiff to undergo a Spanish IQ test to support her claim that her intellectual disability occurred before age 22. Plaintiff argues that the additional testing is necessary in light of one psychologist's opinion that her low IQ score may be invalid because Plaintiff's reliance on Spanish may have caused a language barrier during testing.[56]

The ALJ has discretion to determine whether further evidence, such as additional testing, is necessary.[57] Thus, the Court applies an abuse-of-discretion standard to the ALJ's failure to require a Spanish IQ test.

---

[50] *Id.* at 2.
[51] *See Poll*, 2017 WL 3731988, at *5.
[52] *See* Doc. 12 at 14; Doc. 15 at 3 (arguing only that since there was no evidence of a traumatic event, Plaintiff likely had deficits in adaptive functioning prior to age 22).
[53] Doc. 17 at 33 (citing Doc. 11 at 32, 37, 48, 322).
[54] *Id.* (citing Doc. 11 at 328-32, 334-40).
[55] *See Turner*, 381 F. App'x at 492.
[56] Doc. 18 at 4.
[57] 20 C.F.R. § 404.1517; *id.* § 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests."); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.").

Case No. 1:17-CV-730
Gwin, J.

In light of other record evidence suggesting Plaintiff fails to demonstrate Listing 12.05's diagnostic description, the Court cannot find any abuse of discretion in the ALJ's failure to order further testing.[58] Moreover, an additional IQ score, without more, is not enough to establish Listing 12.05 qualification.[59]

Thus, the Court finds no substantial question as to Plaintiff's satisfaction of the second factor of Listing 12.05's diagnostic description. The Court **ADOPTS** the R&R on this matter.

### 3. *Summary*

In summary, the Court finds no substantial question exists as to whether Plaintiff satisfies Listing 12.05's diagnostic description. Therefore, the Magistrate Judge properly concluded that the ALJ did not have to discuss Plaintiff's Listing 12.05(C) qualification. Accordingly, Court **OVERRULES** Plaintiff's first objection and **ADOPTS IN PART AND REJECTS IN PART** the R&R on this matter.

### B. Residual Functional Capacity (RFC) Assessment

In her second objection, Plaintiff argues that the Magistrate Judge did not adequately address whether the ALJ properly assessed her residual functional capacity (RFC).[60]

As part of deciding a benefits claim, the ALJ is responsible for determining a claimant's RFC.[61] RFC reflects "the most a claimant can do despite her limitations."[62]

To determine a claimant's RFC, an ALJ is responsible for reviewing all the medical evidence in the record,[63] including all medical source opinions.[64] In his RFC assessment, the ALJ

---

[58] *See Foster*, 279 F.3d at 356 ("Given that there was already sufficient testimony on Foster's impairments in the record for the ALJ to evaluate her mental condition and residual functional capacity, the ALJ did not abuse his discretion in denying Foster's requests for additional testing or expert testimony.").
[59] *Hayes*, 357 F. App'x at 676.
[60] Doc. 18 at 5-7.
[61] *See* 20 C.F.R. §§ 404.1546(c), 416.946(c).
[62] *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1545 and 416.945).
[63] 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).
[64] *Smith v. Comm'r Soc. Sec. Admin.*, 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. §§ 404.1527(b), 416.927(b).

Case No. 1:17-CV-730
Gwin, J.

must explain how much weight he is giving to a medical source opinion or "otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."[65] While an ALJ must state good reasons for not giving controlling weight to a treating source opinion, the ALJ need not do so for non-treating source opinions.[66]

Plaintiff mainly objects that the ALJ's RFC assessment fails to "build an accurate and logical bridge between the evidence and the result."[67] In particular, Plaintiff objects that the ALJ failed to properly explain his assessment of Dr. Abraham Mikalov's, Dr. Gerald Kylop's, Mr. Halas's, and Dr. Haskins's medical opinions.[68]

The Court overrules Plaintiff's objection.

For Dr. Mikalov and Dr. Kylop's medical opinions, the ALJ explained he gave these opinions weight because they were consistent with later medical records that the medical consultants had never seen or considered.[69] For Mr. Halas's and Dr. Haskins's opinions, the ALJ explained which aspects of their opinions supported his RFC analysis.[70] In fact, the ALJ explained that he was considering the very parts of these medical consultants' opinions that Plaintiff had used to claim disability.[71]

---

[65] *See* SSR 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006); *Brewer v. Astrue*, No. 4:11–CV–00081, 2012 WL 262632, at *10 (N.D. Ohio Jan. 30, 2012) ("SSR 06–3p does not include an express requirement for a certain level of analysis that must be included in the decision of the ALJ regarding the weight or credibility of opinion evidence from other sources." (internal quotation marks and citation omitted)).
[66] *Gayheart v. Comm'r Soc. Sec. Admin.*, 710 F.3d 365, 375-76 (6th Cir. 2013).
[67] Doc. 18 at 6.
[68] *Id.*
[69] Doc. 11 at 34-35.
[70] *Id.* (relying on Mr. Halas's opinions on Plaintiff's abilities to follow instructions, concentrate, relate with others, pace herself, and handle pressure and Dr. Haskins's opinions regarding Plaintiff's abilities to complete simple tasks and relate to others).
[71] *Id.*

Case No. 1:17-CV-730
Gwin, J.

Nevertheless, Plaintiff objects that the ALJ did not consider Dr. Haskins's opinions about Plaintiff's ability to remember short and simple instructions.[72] But because Dr. Haskins did not provide a treating source opinion, the ALJ was not required to give all of Dr. Haskins's opinion controlling weight, or provide reasons why he was not considering certain parts of the opinion.[73]

The Court thus **OVERRULES** the second objection and **ADOPTS** the R&R on this matter.

### IV. CONCLUSION

For the above reasons, the Court **OVERRULES** Plaintiff's objections; **ADOPTS IN PART AND REJECTS IN PART** the R&R; and **AFFIRMS** the decision of the Commissioner of Social Security.

IT IS SO ORDERED.

Dated: April 17, 2018             *s/     James S. Gwin*
                                                                           JAMES S. GWIN
                                                                           UNITED STATES DISTRICT JUDGE

---

[72] Doc. 18 at 7.
[73] *See Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016), *reh'g denied* (Sept. 20, 2016).